[No. 20181-3-III.   Division Three.   June 17, 2003.]

*In the Matter of the Detention of* KEITH J. ROGERS,
*Petitioner.*

*Jerry M. Makus*, for petitioner.

*Christine O. Gregoire, Attorney General*, and *Sarah B. Sappington, Assistant*, for respondent.

SWEENEY, J. — A person civilly committed under the sexually violent predator statute is entitled to an annual review of his or her mental condition. Former RCW 71.09.070 (1995). The annual review must consider conditional release or a less restrictive alternative. And if the committed person so requests, the "court may appoint a qualified expert" to assist in the determination. Former RCW 71.09.070. Here, the court refused to appoint an expert for Keith Rogers' annual review because the court believed that he had not shown any improvement from earlier evaluations. We conclude that the trial court abused its discretion by requiring some threshold showing of improvement before authorizing funds for a psychologist. And we therefore reverse.

## FACTS

In 1993, a jury found probable cause to believe that Keith J. Rogers was a sexually violent predator. *See* former RCW 71.09.060 (1990). He was then committed to the custody of the Department of Social and Health Services (DSHS) as a sexually violent predator pursuant to chapter 71.09 RCW. The order committing him directed that Mr. Rogers be confined "until such time as the Respondent's mental abnormality and/or personality disorder has so changed that the Respondent is safe to be at large." Clerk's Papers (CP) at 7 (citing former RCW 71.09.090 (1992)). He has remained at the Special Commitment Center in Monroe since that time.

Mr. Rogers has since petitioned the court five times for public funds to hire a psychologist to support his effort to gain conditional release or unconditional discharge. *See* former RCW 71.09.070. The first four requests were unopposed by the State. This fifth request is the basis of this appeal.

The commitment center's annual report of January 2, 2001, recounted the discovery of contraband pornography in Mr. Rogers' room twice during the report period.

On March 9, 2001, the State requested "a show cause hearing . . . to determine whether facts exist that warrant a hearing on whether Respondent's condition has so changed that he is safe to be conditionally released to a less restrictive alternative or unconditionally discharged." CP at 340; *see* former RCW 71.09.090(2) (1995). Mr. Rogers requested public funds to pay for a psychological exam. The State objected. The court denied Mr. Rogers' request for the funds.

## DISCUSSION

RIGHT TO PUBLIC FUNDS FOR A PSYCHOLOGIST

Mr. Rogers argues that he has a right to a psychologist at public expense for this annual review. The State responds that an evaluation by a psychologist is discretionary. And the trial judge did not abuse his discretion here—essentially since there was no showing that such an evaluation would do any good.

*Sexually Violent Predator Commitment Scheme.* Sexually violent predators are committed to the custody of DSHS. Former RCW 71.09.060(1) (1998). Those committed are held in a secure facility for control, care, and treatment until the court determines that the individual detainee's mental abnormality or personality disorder has changed so that he or she is safe to either be at large or be released to a less restrictive alternative. *Id.*

But a committed person is entitled to a current examination of his or her mental condition at least once a year. Former RCW 71.09.070. This annual report must consider whether conditional release to a less restrictive alternative is in the best interests of the person committed and will adequately protect the community. Former RCW 71.09.070.

Those committed may petition for a full hearing if DSHS recommends conditional release to a less restrictive alternative or unconditional discharge. Former RCW 71.09.090(1) (1995). The person detained must also be advised annually in writing of the right to petition for conditional release or

unconditional discharge regardless of DSHS's recommendation. Former RCW 71.09.090(2).

The procedure requires a show cause hearing unless it is waived. *Id.* And at the show cause hearing, the judge must decide whether "probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is not likely to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged." *Id.* If the judge concludes that such a change has occurred, then a full hearing is scheduled. *Id.*

*Applicable Statute.* The applicable annual review statute requires in relevant part that:

> Each person committed under this chapter shall have a current examination of his or her mental condition made at least once every year. . . . The person may retain, or if he or she is indigent and so requests, *the court may appoint* a qualified expert or a professional person to examine him or her.

Former RCW 71.09.070 (emphasis added).

■ *Standard of Review.* Statutory construction is a question of law. So our review is de novo. *In re Det. of Williams*, 147 Wn.2d 476, 486, 55 P.3d 597 (2002).

■ ■ Judicial discretion requires tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Portch v. Sommerville*, 113 Wn. App. 807, 810, 55 P.3d 661 (2002). "A court necessarily abuses its discretion if its decision is based on an erroneous view of the law." *In re Marriage of Scanlon*, 109 Wn. App. 167, 174-75, 34 P.3d 877 (2001), *review denied*, 147 Wn.2d 1026 (2002).

■ ■ *Canons of Construction.* We give statutory terms their plain and ordinary meaning, *State v. Hentz*,[1] assuming that is possible. Where a provision contains both the words "shall" and "may," it is presumed that the lawmaker intended to distinguish between them: "shall" being construed as mandatory and "may" as permissive or discretion-

---

[1] *State v. Hentz*, 99 Wn.2d 538, 541, 663 P.2d 476 (1983).

ary. *Carrick v. Locke*, 125 Wn.2d 129, 142, 882 P.2d 173 (1994); *see also State v. Pineda-Guzman*, 103 Wn. App. 759, 763, 14 P.3d 190 (2000).

We strictly construe statutes that impact on liberty interests. But we must still consider the intent of the statutory scheme. *In re Det. of V.B.*, 104 Wn. App. 953, 960, 19 P.3d 1062 (2001) (citing *In re Det. of Swanson*, 115 Wn.2d 21, 31, 793 P.2d 962 (1990)). And where "the purpose of civil commitment is not punitive, but is instead to benefit the detainee as well as to protect the public, strict construction of the statutory scheme may not be appropriate in all cases." *Id.* (citing *Swanson*, 115 Wn.2d at 31).

In attempting to arrive at the meaning of the words in a particular statute, we place those words in the broader context of related statutes and other provisions of the specific statutory scheme. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 10-12, 43 P.3d 4 (2002).

*Intent of the Statute.* The intent of the annual examination statute, former RCW 71.09.070, when viewed in the context of the procedures regarding release petitions set forth in former RCW 71.09.090, is plainly to allow and facilitate an annual hearing for those detained under the sexually violent predator statute.

The cases cited by Mr. Rogers presume a statutory right to the appointment of an expert.[2] In *Petersen*, the detainee argued that due process entitled him to counsel at his annual exam. *In re Det. of Petersen*, 138 Wn.2d 70, 91, 980 P.2d 1204 (1999). The superior court held that Mr. Petersen's due process concerns were not well founded. But

___

[2] *See In re Det. of Petersen*, 138 Wn.2d 70, 76, 980 P.2d 1204 (1999) (noting that the detainee had undergone three annual evaluations at the special commitment center since his original commitment, but he declined all treatment and "declined to present any expert testimony on his behalf in any of his annual reviews, although he has a statutory right to obtain an expert's opinion at public expense if he is indigent. RCW 71.09.070."). *See also In re Pers. Restraint of Young*, 122 Wn.2d 1, 13, 857 P.2d 989 (1993) (noting that RCW 71.09.070 requires annual examinations and that "the person may obtain an additional examination at state expense, if necessary"); *People v. Cheek*, 25 Cal. 4th 894, 901, 24 P.3d 1204, 108 Cal. Rptr. 2d 181 (2001) (observing that *Petersen* "noted the defendant's statutory right to have experts appointed to evaluate the defendant and testify on his behalf").

it did so because of "[Mr.] Petersen's statutory right to have experts evaluate him and testify on his behalf, and the right to have the court appoint an expert if he can prove indigency." *Id.* at 92. The court then predicated its due process conclusion on the right to have an expert appointed.

*Exercise of Discretion.* The court based its decision, at least in part, on the assumption that Mr. Rogers had requested and had been granted funds for an expert every year since his initial detention. Report of Proceedings (RP) at 23-34. Mr. Rogers was committed in 1993. Since then he requested and received four independent experts before his fifth request was denied in 2001. So he made only half the requests he could have. Mr. Rogers did not then successfully make yearly requests as the State argued and as the court seemed to assume.

The court's decision was also based on the assistant attorney general's own policy: the first request would not be opposed, but some subsequent requests would be opposed unless there is some showing by the detainee that he is suitable for release. RP at 6, 9. But we find no such "threshold" requirement anywhere in this statutory scheme.

Former RCW 71.09.100 (1990), *repealed by* Laws of 1995, chapter 216, section 22, provided that after the first petition was denied, the detainee had no right to a hearing on a petition for release without DSHS's approval, "unless the petition contains facts upon which a court could find that the condition of the petitioner had so changed that a hearing was warranted." Absent such a showing, the court was required to summarily deny the petition. *Id.* But this is no longer the rule. The Supreme Court has also struck down other standards advanced by the State in other scenarios involving involuntary commitment.[3]

---

[3] *See In re Det. of Petersen*, 145 Wn.2d 789, 801, 42 P.3d 952 (2002) (holding that the trial court's erroneous acceptance of the State's urged requirement that the detainee show "good cause" for taking the deposition of the State's examining physician prior to the probable cause hearing denied the detainee his "right to depose [the State's doctor] to prepare for the probable cause hearing").

Here, the court suggested that Mr. Rogers make some showing that an expert would ultimately testify favorably in his behalf. RP at 23-24. But it is unlikely that any expert would willingly review Mr. Rogers' record pro bono. The preliminary determination of improvement by the expert at the show cause hearing is grounds for a *full hearing*. *See* former RCW 71.09.090(2). The trial judge's ruling is then based on an erroneous view of the law. *See Scanlon*, 109 Wn. App. at 174-75.

Even if the court's criteria were valid, however, everyone concedes that Mr. Rogers had shown *some* improvement. RP at 9. And full release is not the only option, less restrictive alternatives must be considered on an annual basis. Former RCW 71.09.070; *see also In re Pers. Restraint of Young*, 122 Wn.2d 1, 47, 857 P.2d 989 (1993) (courts must consider less restrictive alternatives at commitment trials under the sexually violent predator statute). Mr. Rogers was denied the opportunity to have an expert review his progress.

## CONCLUSION

The court abused its discretion by denying funds for the annual review here.

The order denying funds for Mr. Rogers' annual review is reversed.

KATO, A.C.J., and KURTZ, J., concur.