# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47740-8-II |
| Respondent, | Consolidated with:<br>No. 47742-4-II |
| v. | No. 47743-2-II<br>No. 47745-9-II |
| JASON SHIRTS, | |
| Appellant. | PUBLISHED OPINION |

LEE, J. — Jason Shirts filed four separate motions under RCW 10.01.160(4) seeking remission of the legal financial obligations (LFOs) imposed on him in four prior convictions. The superior court denied the motions because there was no showing that the State had tried to collect on the LFOs. Shirts filed notices of appeal, which were treated by this court as motions for discretionary review and granted.

Shirts argues that he has standing to appeal the superior court's decision as an aggrieved party and that the superior court erred in denying his motions to remit because he was entitled to a hearing on his motions. We hold that Shirts is an aggrieved party. We further hold that although the superior court erred in denying Shirts's motions to remit on the basis of failing to allege or prove that the State sought to collect the LFOs, the superior court was not required to hold an

evidentiary hearing on the motions. Therefore, we reverse and remand to the superior court to consider the motions for remission on the merits.

FACTS

In May 2015, Shirts filed four separate motions to remit the LFOs he owed under four cause numbers in Clark County Superior Court.[1] Shirts was sentenced after pleading guilty in each cause number; the guilty pleas were entered in 2002, 2006, 2008, and 2012. Each sentence imposed LFOs.

After Shirts was last sentenced in 2012, he owed $31,986.12 in LFOs; at the end of 2013, because of the accrued interest, Shirts owed $35,824.45.[2] Shirts asserted that the LFOs were causing him to be denied transitional classes and classification advances in the Department of Corrections (DOC), that he had no salary, wages, or money in a bank account, that he owned no property of value, that he was not married, and that he owed $100,000 to a creditor in Gig Harbor.

Shirts's motions to remit were brought pursuant to RCW 10.01.160(4). In support of his motions, Shirts also filed several affidavits, other motions, declarations of service, and proposed findings. In his motions, Shirts contended that the superior court did not consider his ability to pay when imposing LFOs, nor did the superior court consider his ability to pay the interest on the LFOs. Shirts argued that he had "been incarcerated since 2012[,] . . . [h]is circumstances ha[d]

---

[1] Clark County Superior Court Cause Nos. 02-1-00245-5; 06-1-01644-1; 07-1-02248-1; and 12-1-01206-1.

[2] The State does not dispute these figures.

changed drastically[,] and these fines [we]re causing a sever[e] hardship on him and his family."

Mot. for Discretionary Review Appendix (App.) at 55, 138, 228, 308.

The State responded to Shirts's motions by citing to *State v. Crook*, 146 Wn. App. 24, 189 P.3d 811 (2008), *review denied*, 165 Wn.2d 1044 (2009), for the proposition that Shirts could move to terminate his LFOs only after the State had attempted to collect on his obligations. The State argued that because Shirts did not show that the State had attempted to collect on Shirts's LFOs, the superior court must deny the motions.

On May 21, 2015, Shirts filed motions to appear telephonically at a hearing or to be transported by DOC to appear at a hearing in person. In the alternative, Shirts asked to reschedule the hearing.

The superior court entered orders for each motion on May 21, 2015. The superior court found that Shirts "failed to allege or provide evidence that Clark County is attempting or seeking enforcement/collection of Legal Financial Obligations at this time" and denied the motions. App. at 73, 157, 247, 326.

Shirts filed notices of appeal with supporting affidavits in each of the four cause numbers. The State moved to strike the notices, again arguing that Shirts had not shown that the State had sought to collect on the LFOs and was therefore not entitled to a hearing. The State also argued that Shirts did not support his allegations of hardship with documented evidence or a sufficient record.

Nos. 47740-8-II/47742-4-II/
47743-2-II/47745-9-II

The parties were informed that the notices of appeal would be treated as notices for discretionary review. A commissioner of this court then granted discretionary review on October 26, 2015. Discretionary review was granted on the issues of whether Shirts is an "aggrieved party" with standing to appeal and whether the superior court erred in denying Shirts's motions to remit without a hearing because he failed to allege or prove the State was attempting to collect LFOs.

ANALYSIS

A.      AGGRIEVED PARTY UNDER RAP 3.1

This court granted discretionary review as to whether Shirts is an "aggrieved party" under RAP 3.1.[3] Ruling Granting Rev. at 12. We hold that Shirts is an "aggrieved party."

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. "'An aggrieved party is one who has a present, substantial interest, as distinguished from a mere expectancy, or . . . contingent interest in the subject matter.'" *State v. Mahone*, 98 Wn. App. 342, 347, 989 P.2d 583 (1999) (quoting *Tinker v. Kent Gypsum Supply, Inc.*, 95 Wn. App. 761, 764, 977 P.2d 627, *review denied*, 139 Wn.2d 1008 (1999)).

---

[3] The State argues that this issue is not properly before us. We reject this argument. A commissioner of this court granted discretionary review of the trial court's denial of Shirts' motions to remit. The State did not seek to modify the commissioner's order or seek reconsideration. Thus, the State's argument that this case is not properly before us fails.

4

Nos. 47740-8-II/47742-4-II/
47743-2-II/47745-9-II

In *Mahone*, the court considered whether the superior court's denial of Mahone's motion to remit under a nearly identical statute, RCW 10.73.160(4),[4] was appealable as a matter of right. *Id.* at 346. Instead of reaching the issue of appealability as a matter of right, the court held that "Mahone [wa]s not aggrieved by the order denying remission" because the State had not yet attempted to enforce payment of the LFOs, and therefore, Mahone was not an aggrieved party eligible to seek appellate review. *Id.* at 347. The court reasoned:

> Before Mahone is aggrieved, as defined in RAP 3.1, two things must happen. It must be determined that he has the ability to pay and the State must proceed to enforce the judgment for costs. Until such time as the State determines he has the ability to pay and enforces payment of the costs assessed against him, any attempt to determine whether payment will create a hardship is mere speculation.

---

[4] Title 10.73 RCW deals with appellate costs in criminal appeals, and RCW 10.73.160(4) states:

> A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment may at any time petition the court that sentenced the defendant or juvenile offender for remission of the payment of costs or of any unpaid portion. If it appears to the satisfaction of the sentencing court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the sentencing court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

Thus, RCW 10.73.160(4) and RCW 10.01.160(4) are nearly identical, the exceptions being: (1) that RCW 10.01.160(4) includes the word "thereof" in the first sentence between "payment" and "may" and again after "unpaid portion"; (2) that RCW 10.01.160(4) refers to the "sentencing court" where RCW 10.73.160(4) refers to the "court that sentenced the defendant"; and (3) that RCW 10.73.160(4) refers to "the sentencing court" in the second sentence where RCW 10.01.160(4) simply refers to "the court."

5

*Id.* at 348.  The *Mahone* court held that this "mere speculation" is insufficient to meet the "'present, substantial interest,'" standard of an aggrieved party entitled to seek appellate review under RAP 3.1.  *Id.* at 347-48.

Applying *Mahone* to the case at bar, Shirts would not be an aggrieved party entitled to seek appellate review of the superior court's denial of his motions to remit because neither of the "two things" that "must happen" for Shirts to be "aggrieved, as defined in RAP 3.1" have happened.  *Id.* First, there has not been a determination that Shirts has the ability to pay his LFOs, and second, the State has not proceeded to enforce the collection of his LFOs.  *Id.*  Thus, under *Mahone*, Shirts would not be an aggrieved party and would not be entitled to review of a superior court's determination on a motion to remit until after the State attempts to enforce payment of LFOs.

However, this court decided *Mahone* long before our Supreme Court's recent decision in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).  And *Blazina* calls into question the continued precedential value of *Mahone*.

In *Blazina*, the defendant challenged a trial court's imposition of LFOs for the first time on appeal, arguing that the trial court erred by imposing discretionary LFOs without making an individualized inquiry into his ability to pay as required by RCW 10.01.160(3).  *Id.* at 830.  The court rejected the State's argument that the proper time for a defendant to challenge the imposition of LFOs is when the State seeks to collect.  *Id.* at 830, 832 n.1.  Instead, the court, recognizing the

reality of "broken LFO systems" that create a multitude of problems for impoverished offenders,[5] exercised its discretion to reach the merits of the case. *Id.* at 835.

*Blazina's* recognition of the impacts LFOs have on offenders contradicts *Mahone*'s reasoning that any determination of whether payment will create a hardship would be mere speculation if no enforcement is sought. In light of *Blazina*, and contrary to the court's conclusion in *Mahone*, an offender can be "aggrieved" even if the State does not attempt to enforce payment.[6] Therefore, given the recognized and real impacts LFOs have on offenders, we decline to follow *Mahone*'s requirement that the State must attempt to collect LFOs from an offender before the offender can be considered "aggrieved."

---

[5] The *Blazina* court extensively reviewed the various problem associated with LFOs that offenders face, including inequities between impoverished offenders and their wealthier counterparts, causing offenders who cannot afford to pay to remain under the court's jurisdiction longer; the court's long-term involvement in the offenders' lives inhibits reentry into society because legal or background checks will show an active record in court for individuals who have not fully paid their LFOs; active court records negatively impact employment, credit ratings, housing, and finances; and disparate impact on minorities, who receive disproportionately higher LFO penalties. 182 Wn.2d at 835-37.

[6] The continued precedential value of *Mahone* is further called into question by our decision in *State v. Hathaway*, 161 Wn. App. 634, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011). In *Hathaway*, we addressed the issue of whether a challenge to a LFO for a jury demand fee can be challenged before the State seeks to enforce payment. *Id.* at 651. We acknowledged the holding in *Mahone* that an offender is "not yet 'aggrieved in a legal sense'" until the State seeks payment of the LFO, but we still reached the merits of the issue, relying on RAP 1.2(c). 161 Wn. App. at 651 (quoting *State v. Smits*, 152 Wn. App. 514, 525, 216 P.3d 1097 (2009)). RAP 1.2(c) permits appellate courts to waive or alter the rules of appellate procedure in order to serve the ends of justice. *Id.* at 652. Therefore, because resolution of the issue would facilitate justice and conserve future judicial resources, we addressed the merits of the issue. *Id.*

Here, in addition to the impacts identified in *Blazina*, Shirts provided evidence that he is currently denied access to transitional classes and classification advances in DOC due to his outstanding LFOs. We hold that Shirts is an aggrieved party under RAP 3.1.

B.    MOTION FOR REMISSION UNDER RCW 10.01.160

Shirts argues that the superior court erred in failing to reach the merits of his motions. Specifically, Shirts argues that because the statute allows defendants to move for remission "at any time," RCW 10.01.160(4), "it follows that [the defendants] must be given some process on the subject of remission when they so move." Br. of Appellant at 12-13. Shirts argues, "Without some fact finding process, no court could satisfy itself that payment will or will not impose a manifest hardship," and "no manifest hardship determination can be made unless and until the moving party is able to present evidence and arguments to the trial court demonstrating why the LFOs cause manifest hardship." Br. of Appellant at 13. We agree that the superior court erred in denying Shirts's petition on the basis that Shirts had not alleged or shown that the State was seeking enforcement or collection of his LFOs, but we disagree that the superior court is required to hold an evidentiary hearing just because a petition under RCW 10.01.160(4) is filed.

1.    Standard of Review

We review issues of statutory construction de novo. *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). We look to the statute's plain language in order to give effect to legislative intent, giving statutory terms their plain and ordinary meaning. *Id.*; *In re Det. of Rogers*, 117 Wn. App. 270, 274, 71 P.3d 220 (2003). We do not engage in judicial interpretation of an unambiguous statute. *State v. Thorne*, 129 Wn.2d 736, 762-63, 921 P.2d 514 (1996). A statute is ambiguous

8

when the language is susceptible to more than one reasonable interpretation. *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005). Whenever possible, statutes are read in harmony and in such manner as to give each effect. *State v. Bays*, 90 Wn. App. 731, 735, 954 P.2d 301 (1998).

Statutes are interpreted to give effect to all language in them and to render no portion meaningless or superfluous. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). "Where a provision contains both the words 'shall' and 'may,' it is presumed that the lawmaker intended to distinguish between them: 'shall' being construed as mandatory and 'may' as permissive or discretionary." *Rogers*, 117 Wn. App. at 274-75. We avoid a reading that produces absurd results because this court does not presume the legislature intended absurd results. *J.P.*, 149 Wn.2d at 450.

2.      A Petition to Remit Under RCW 10.01.160(4)

RCW 10.01.160(4) provides:

> A defendant who has been ordered to pay costs and who is not in contumacious default in the payment thereof may at any time petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

Per this statute, in order to file a petition to remit, a defendant must meet two conditions.[7] RCW 10.01.160(4). First, the defendant has to have been "ordered to pay costs," and, second, the

---

[7] We note the distinction here between mandatory and discretionary LFOs. Mandatory LFOs are not "costs" under RCW 10.01.160(1) and (2), and therefore, they are not subject to a motion to remit under RCW 10.01.160(4).

defendant has to not be "in contumacious default."[8]  RCW 10.01.160(4).  If a defendant meets these two conditions, the defendant may file a petition to remit "at any time."  RCW 10.01.160(4).

As stated above, "may" is presumed to be permissive, which makes sense because it would be absurd for the legislature to require that defendants petition courts to remit their LFOs simply because LFOs are owed and the defendants are not in default.  *Rogers*, 117 Wn. App. at 274-75.  The phrase "at any time" is unambiguous.  RCW 10.01.160(4).  Thus, the plain and unambiguous language of the statute's first sentence *permits* a defendant to petition the superior court for remission of his LFOs "*at any time*," so long as the defendant owes LFOs and is not in "contumacious default."  RCW 10.01.160(4) (emphasis added).

Here, Shirts showed the superior court, through the supporting affidavits and other filings, that he owed LFOs.  There is no indication that Shirts was in "contumacious default."  Therefore, the plain and unambiguous language of the statute permitted Shirts to petition to remit his LFOs "at any time."  RCW 10.01.160(4).

The second sentence of the statute directs the trial court's action after the defendant has filed his or her petition for remission: "If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170."  RCW 10.01.160(4).  Like the first sentence, the second sentence is plain and unambiguous.  It gives the superior court broad discretion to remit the LFOs by first allowing

---

[8]  Webster's defines "contumacious" as "perverse in resisting authority" and "stubbornly disobedient."  WEBSTER'S THIRD INTERNATIONAL DICTIONARY 497 (1969).

10

the superior court to determine whether it is satisfied that the defendant has shown "manifest hardship," and then, if the superior court is satisfied that "manifest hardship" has been shown, it has discretion to "remit all or part of the amount due in costs." RCW 10.01.160(4).

Here, Shirts filed his petitions, with supporting affidavits and other filings, asserting that his LFOs imposed "sever[e] hardship" upon him and his family. App. at 55, 138, 228, 308. At that point, the statute requires the superior court to determine whether Shirts had made a satisfactory showing of "manifest hardship." RCW 10.01.160(4). But the superior court did not do so. Instead, the superior court denied the motion as untimely because the State had not sought to collect. The superior court, by failing to exercise its discretion, abused its discretion. *State v. Stearman*, 187 Wn. App. 257, 265, 348 P.3d 394 (2015) ("A trial court abuses its discretion when it fails to exercise its discretion."). Therefore, based on to the plain language of the statute, the superior court erred in not following the plain language of the statute.

3.      The Statute Does Not Require an Evidentiary Hearing

Shirts further contends that the superior court erred in failing to grant him an evidentiary hearing on his motions to remit. We disagree because Shirts's contention lacks support in the statute and in case law.[9]

Nothing in the plain language of the statute requires an evidentiary hearing to be held. *See* RCW 10.01.160(4). Asking us to interpret the phrase: "[i]f it appears to the satisfaction of the court" to mean an evidentiary hearing must be held would require us to interpret, or add language to, an unambiguous statute, contrary to the rules of statutory interpretation. RCW 10.01.160(4);

---

[9] Shirts does not argue that any constitutional provision requires an evidentiary hearing.

*Thorne*, 129 Wn.2d at 762-63 (holding that appellate courts do not engage in judicial interpretation of an unambiguous statute). If the superior court is able to make its "manifest hardship" determination on the pleadings alone, an evidentiary hearing would be superfluous. On the other hand, if the superior court reviews the pleadings and believes an evidentiary hearing would be instructive, the statute does not prohibit an evidentiary hearing.

Existing case law supports this interpretation. Division Three of this court, in *State v. Crook*, 146 Wn. App. at 26, rejected the argument that the failure to hold an evidentiary hearing before denying a motion to remit LFOs was error. In *Crook*, as is the case here, the defendant moved for remission of his LFOs while he was incarcerated and the superior court denied the motions without an evidentiary hearing. *Id*. The *Crook* opinion did not provide the superior court's stated reason for denying the motion to remit, but it held that nothing in the record before it showed the superior court erred in denying the motions to remit without an evidentiary hearing. *Id.* at 28.

Shirts attempts to distinguish *Crook* on the basis that Crook alleged that DOC was enforcing the collection of LFOs, whereas Shirts does not allege that there has been an attempt at collection. Shirts also argues that *Crook* is wrongly decided because the court stated that DOC deductions from inmate wages to repay LFOs were not State collections actions, which Shirts says is incorrect. Neither of Shirts's arguments invalidates *Crook*'s persuasive effect on our decision because determining whether an agency or the State has attempted to collect LFOs does not dictate whether an evidentiary hearing is required. Thus, Shirts's argument fails.

Nos. 47740-8-II/47742-4-II/
47743-2-II/47745-9-II

CONCLUSION

We hold that Shirts is an aggrieved party. We further hold that although the superior court

erred in denying Shirts's motions to remit because Shirts failed to allege or prove that the State

sought to collect the LFOs, the superior court was not required to hold an evidentiary hearing on

the motions. Therefore, we reverse and remand to the superior court to consider the motions for

remission on the merits.[10]

_____
Lee, J.

We concur:

_____
Johanson, P.J.

_____
Sutton, J.

---

[10] In his brief, Shirts requests that we instruct superior courts to follow the standard set forth in GR 34, and specifically GR 34(a)(3)(A), as the "appropriate standard to assess whether the payment of the outstanding balance of already assessed LFOs present a manifest hardship under RCW 10.01.160(4)." Br. of Appellant at 28. We decline to do so because the issue is beyond the scope of discretionary review. Therefore, this issue is not properly before us.

Shirts also asks that we hold that counsel should be appointed to assist all indigent people in the remissions process. Again, this issue is beyond the scope of discretionary review and not properly before us.

13