

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34656-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SYLVESTER C. LOPEZ SR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — The trial court denied Sylvester Lopez's motion for remission of

legal financial obligations imposed on him by the superior court when the court convicted

him of crimes and by this reviewing court after the completion of appeals. Because

Lopez's legal financial obligations include mandatory obligations and because Lopez

fails to show a manifest hardship in paying other obligations, we affirm the trial court.

FACTS

In May 2000, the superior court convicted Sylvester Lopez of two counts of

assault in the first degree, two counts of assault in the second degree, and one count of

unlawful possession of a firearm. The court sentenced Lopez to lifetime imprisonment

without the possibility of parole and imposed $778.69 in legal financial obligations. The

financial obligations consisted of $110.00 in court costs, $70.99 in witness fees, $50.00 in

jury demand fees; $47.70 in sheriff fees, and a $500.00 victim assessment. The May 11, 2000 judgment and sentence directed Lopez to pay $25.00 per month, beginning November 5, 2000, to retire the obligations.

Sylvester Lopez appealed his convictions and sentence, and this court reversed the first degree unlawful possession of a firearm charge and vacated the lifetime sentence due to the State's failure to establish the predicate convictions. On resentencing, the superior court imposed two hundred and ninety-seven months' confinement. The superior court re-imposed the same legal financial obligations. Lopez appealed his sentence again. This court affirmed Lopez's sentence and assessed $2,512.49 against him in appellate costs.

In 2004, Sylvester Lopez filed a CrR 7.8 motion for relief from judgment, which motion the superior court denied. This reviewing court affirmed the denial of the motion and assessed an additional $2,597.45 against Lopez in appellate costs. In 2012, Lopez filed another motion for relief from judgment, which motion the superior court denied. Lopez appealed, and this court affirmed and imposed $2,477.26 more in appellate costs against Lopez.

A Department of Corrections (DOC) accounting sheet shows that Lopez paid nominal sums on the obligations debt in 2013 and 2014. The sums ranged from a penny on October 28, 2013 to $3.89 on August 19, 2014. According to other DOC records, Lopez paid $6 in the fall of 2015 and $48.03 in the spring of 2016 toward financial

2

obligations.

PROCEDURE

In July 2016, Sylvester Lopez filed a motion with the superior court to remit all of his legal financial obligations. In the alternative, he sought waiver of interest. Lopez then remained in prison.

According to Sylvester Lopez's motion for remission, the sum of the legal financial obligations, by July 2016, had increased to $15,703.37 due to the accumulation of interest. Lopez noted that he possessed a ninth-grade education and will be in his 60s when released from prison. Lopez argued that any job he garners on release from prison will likely not generate income above minimum wage and he will likely rely on government financial assistance. He contended that he and his family would suffer hardship as a result of the burden of the obligations. Lopez failed to provide the superior court any facts under oath.

In response to Sylvester Lopez's motion for remission, the State of Washington argued that Lopez failed to establish manifest hardship to him or his family resulting from the legal financial obligations. The State noted that Lopez held employment in the past and the court should conclude that Lopez will be capable of working once released from incarceration.

Because Sylvester Lopez filed his motion without the assistance of legal counsel and because he remained in prison at the time of the motion hearing, no one appeared on

3

No. 34656-1-III
*State v. Lopez Sr.*

Lopez's behalf at the hearing. When the superior court entertained the motion on the motion docket, the following exchange occurred between the State's counsel and the court:

> [STATE]: That is Mr. Lopez's pro se motion, your Honor. We filed a response.
> . . . COURT: I have reviewed that. That would be denied. Do you have an order?

Report of Proceedings at 1.

The superior court denied Sylvester Lopez's motion for remission in whole. The written order denying remission reads in part:

> 1. The mandatory legal financial obligations consisting of the criminal clerk's filing fee, and the crime victim[']s penalty cannot be waived;
> 2. Requiring the payment of the legal financial obligations by the defendant will not impose a manifest hardship on the defendant or the defendant's immediate family, that none of the grounds for granting relief in RCW 9.94A.7605 or otherwise apply in this case;
> 3. The defendant has the right to petition the court for relief after he has been released from confinement.

Clerk's Papers at 103.

## LAW AND ANALYSIS

Sylvester Lopez asserts three principal arguments on appeal. First, the trial court erroneously denied his motion for remission. Second, the imposition of interest and the forced collection of legal financial obligations from his DOC account without consideration of his ability to pay violates the due process clause. Third, this Court of

4

Appeals division's general order of June 10, 2016, imposing a procedure for seeking

waiver of costs on appeal, conflicts with RAP 14.2 and 15.2. We reject Lopez's first and

third argument on their respective merits. We decline review of the second argument

because Lopez did not raise the argument below.

Motion for Remission

We first address the merits of Sylvester Lopez's motion for remission. RCW

10.01.160(4) reads:

> A defendant who has been ordered to pay costs and who is not in
> contumacious default in the payment thereof may at any time petition the
> sentencing court for remission of the payment of costs or of any unpaid
> portion thereof. If it appears to the satisfaction of the court that payment of
> the amount due will impose manifest hardship on the defendant or the
> defendant's immediate family, the court may remit all or part of the amount
> due in costs, or modify the method of payment under RCW 10.01.170.

(Emphasis added.)

Under RCW 10.01.160(4), an offender, who owes legal financial obligations and

who is not in "contumacious default," may petition for remission of costs "at any time."

RCW 10.01.160(4); *State v. Shirts*, 195 Wn. App. 849, 858-59, 381 P.3d 1223 (2016). If

the offender has not contumaciously defaulted, the trial court must determine whether the

court's imposition of financial obligations creates a "manifest hardship." RCW

10.01.160(4); *City of Richland v. Wakefield*, 186 Wn.2d 596, 605-06, 380 P.3d 459

(2016); *State v. Wilson*, 198 Wn. App. 632, 634-35, 393 P.3d 892 (2017). If payment

will impose manifest hardship on the defendant or the defendant's immediate family, the

court "may" remit all or part of the amount due or modify the method of payment under RCW 10.01.170. RCW 10.01.160(4); *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997).

We note the distinction between mandatory and discretionary legal financial obligations. Mandatory legal financial obligations are not "costs" under RCW 10.01.160(1) and (2), and, therefore, the mandatory obligations are not subject to a motion to remit under RCW 10.01.160(4). *State v. Shirts*, 195 Wn. App. at 858 n.7. The May 11, 2000 judgment against Sylvester Lopez levied $778.69 in legal financial obligations. This sum included mandatory obligations of a $500.00 victim assessment fee and a $110.00 criminal case filing fee. Any motion for remission could not remove these $610.00 in mandatory obligations. We do not address whether an offender may obtain remission of interest owed on mandatory legal financial obligations, since Sylvester Lopez does not raise this discrete issue. We instead address whether the trial court should have remitted the remaining $168.69 and appellate costs in discretionary legal financial obligations and any interest thereon.

Sylvester Lopez must show he was not in "contumacious default" when he filed his motion for remission. *Webster's* defines "contumacious" as "perverse in resisting authority" and "stubbornly disobedient." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 497 (1969); *State v. Shirts*, 195 Wn. App. at 859 n.9. The superior court never expressly determined if Sylvester Lopez was in contumacious default.

6

When Sylvester Lopez filed his motion for remission, he sat in jail. Any employment would have been within the structure of the prison system and the system would have paid Lopez only a nominal amount. We know of no income accrued by Lopez, and Lopez asserted indigency. The State did not argue before the superior court that Lopez willfully defaulted on his financial obligations. We conclude that Lopez was not in contumacious default and therefore free to file his motion.

Sylvester Lopez next needed to prove manifest hardship. The term "manifest hardship" is undefined in RCW 10.01.160(4). *City of Richland v. Wakefield*, 186 Wn.2d at 606 (2016). One's present inability to provide for one's own basic needs, food, shelter, and basic medical expenses, would meet that standard, however. *City of Richland v. Wakefield*, 186 Wn.2d at 606. Possessing some ability to pay does not necessarily preclude payment from creating a manifest hardship. *City of Richland v. Wakefield*, 186 Wn.2d at 605. In determining manifest hardship, the trial court should use GR 34 as a guide. *City of Richland v. Wakefield*, 186 Wn.2d at 606. GR 34 is a court rule designed to simplify the process for determining whether a person is indigent for purposes of court and clerk's fees and charges in civil cases. *City of Richland v. Wakefield*, 186 Wn.2d at 606-07. Under GR 34, "courts must find a person indigent if his or her household income falls below 125 percent of the federal poverty guideline." *City of Richland v. Wakefield*, 186 Wn.2d at 607. If someone meets the GR 34 standard for indigency, courts should

seriously question that person's ability to pay financial obligations. *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015); *City of Richland v. Wakefield*, 186 Wn.2d at 607.

To repeat, RCW 10.01.160(4) reads, in part:

> If it appears to the satisfaction of the court that payment of the *amount due will impose manifest hardship* on the defendant or the defendant's immediate family, the court *may remit* all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170.

(Emphasis added.) We note the statute's employment of the word "may." The legislature's use of the term "may" generally indicates the existence of an option that is a matter of discretion. *Whatcom County v. Western Washington Growth Management Hearings Board*, 186 Wn.2d 648, 694, 381 P.3d 1 (2016). If the superior court becomes satisfied that the offender shows "manifest hardship," the court holds discretion to "remit all or part of the amount due in costs." *State v. Shirts*, 195 Wn. App. at 859-60 (quoting RCW 10.01.160(4)). Therefore, the granting of remission may not automatically follow from a finding of hardship.

Discretion is not unlimited, and the superior court should posit a sound reason if it denies the motion for remission. The trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or reasons. *King County v. Vinci Construction Grands Projects/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 632, 398 P.3d 1093 (2017); *Allard v. First Interstate Bank of Washington, NA*, 112 Wn.2d 145, 148, 768 P.2d 998, 773 P.2d 420 (1989).

In *City of Richland v. Wakefield*, 186 Wn.2d 596 (2016), the Supreme Court ordered that the trial court remit Briana Wakefield's discretionary legal financial obligations. The trial court had ordered Briana Wakefield to pay $15 each month toward her outstanding legal financial obligations. Unlike Sylvester Lopez, Wakefield was homeless and disabled. Her only income was $710 in social security disability payments each month, and, as a result, she struggled to meet her own basic needs. The City of Richland agreed that Wakefield suffered manifest hardship and asked the Supreme Court to reverse the trial court. The high court also noted that Wakefield's only income was social security and, under federal law, no creditor could reach that income. Regardless the court noted that Wakefield had no present or future ability to pay legal financial obligations and she struggled to obtain basic needs such as secure housing, food, and medical care.

On appeal, Sylvester Lopez maintains that the trial court made no substantive determination of the manifest hardship alleged by Lopez. He characterizes the superior court's decision as a "one-sentence ruling." Br. of Appellant at 6. We disagree that the trial court failed to render a substantive ruling. The court bespoke on the record that it reviewed Lopez's motion and the State's response. Such a review and a written order suffices. Outlining all of the reasons for the denial on the record serves no purpose when one of the parties is absent. The remission statute does not require oral findings or oral legal conclusions.

To repeat, Sylvester Lopez remained incarcerated when he filed his motion for remission. Economic considerations lack relevance when the State prison system provides one shelter and food. Although he also claimed the legal financial obligations burdened his family, Lopez supplied no evidence of a family, let alone the income of any family members or the financial circumstances of a family. Lopez forwarded a conclusory statement that he may not be employable when released from prison in his 60s. Nevertheless, he provided no substantiation behind this allegation. He failed to disclose what work he performed before prison. He supplied no explanation as to why he could not continue in such work after prison. He afforded no financial statement that listed assets and debts. Therefore, we conclude that the superior court did not abuse its discretion when denying the motion for remission.

We note that Sylvester Lopez filed no declaration or affidavit under oath. A party seeking remission of legal financial obligations should declare in a written statement under penalty of perjury or in court under oath as to his or her complete financial circumstances.

Sylvester Lopez also argues the superior court erred in its third finding that Lopez holds the right to petition the court for relief after he has been released from confinement. Read literally, this statement of the law is correct. Lopez may bring a motion for remission on his freedom from incarceration. To the extent that the third finding may be read to preclude Lopez from filing a motion for remission until release from prison, we

disagree. *State v. Wilson*, 198 Wn. App. 632 (2017) and *State v. Shirts*, 195 Wn. App. 849 (2016) both acknowledge that inmates have the right to petition for relief under RCW 10.01.160(4) given the statute's "at any time" language.

Interest and Forced Collection

Sylvester Lopez next contends that the imposition of interest and the forced collection of legal financial obligations from his DOC account without any consideration of his ability to pay violates due process. In so arguing, Sylvester Lopez presents decisions that hold, under the due process clause, an offender may not be jailed for failing to pay legal financial obligations when the offender lacks resources to pay. Nevertheless, Lopez cites no decision involving the taking of money from an offender's prison account to pay financial obligations. He forwards no decision that addresses a prisoner's ability to pay under circumstances when the prisoner receives shelter and food from the state corrections system. To the contrary, in *State v. Crook*, 146 Wn. App. 24, 27-28, 189 P.3d 811 (2008), this court held that payment of legal financial obligations does not qualify as a collection action by the state requiring inquiry into a defendant's financial status.

Sylvester Lopez did not raise this second assignment of error before the superior court. A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Detention of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*,

11

100 Wn.2d 26, 37, 666 P.2d 351 (1983).  We may decline to consider an issue that was inadequately argued below.  *International Association of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 36-37, 42 P.3d 1265 (2002); *Mid Mountain Contractors, Inc. v. Department of Labor & Industries*, 136 Wn. App. 1, 8, 146 P.3d 1212 (2006).

RAP 2.5(a) formalizes a fundamental principle of appellate review.  The first sentence of the rule reads:

> **Errors Raised for First Time on Review.**  The appellate court may refuse to review any claim of error which was not raised in the trial court.

RAP 2.5(a) contains a number of exceptions.  RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies.

A manifest error represents an error easy to find or readily discernable.  When the appellant cites no case authority that directly supports his position, we do not consider any assigned error to be manifest.  Therefore, we decline to address Sylvester Lopez's second assignment of error.

## Division Three General Order

On June 10, 2016, this division of the Court of Appeals adopted a general order that directs an offender appellant to file certain pleadings if he or she wishes the court to deny costs to the State if the State prevails.  The order declares in part:

> (2) An adult offender convicted of an offense who wishes this court

12

to exercise its discretion not to award costs in the event the State substantially prevails on appeal must make the request and provide argument in support of the request, together with citations to legal authority and references to relevant parts of the record, in the offender's opening brief or by motion as provided in Title 17 of the Rules on Appeal. Any such motion must be filed and served no later than 60 days following the filing of the appellant's opening brief. RAP 17.3 and 17.4 apply to the motion's content, filing and service and to the submission and service of any answer or reply.

(3) If inability to pay is a factor alleged to support the request, then the offender should include in the record on appeal the clerk's papers, exhibits, and the report of proceedings relating to the trial court's determination of indigency and the offender's current or likely ability to pay discretionary financial obligations. The offender shall also file a report as to continued indigency and likely future inability to pay an award of costs on the form set forth below. The original report, signed by the offender under penalty of perjury, shall be filed with the court and a copy shall be served on the respondent no later than 60 days following the filing of the appellant's opening brief.

Gen. Order 2016 of Division III, *In re Court Administration Order Re: Request to Deny Cost Award* (Wash. Ct. App.).

Sylvester Lopez contends our June 10, 2016 general order conflicts with RAP 14.2 and RAP 15.2. Rule 14.2 previously read, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." Former RAP 14.2 (1998). Our Supreme Court amended the rule effective January 31, 2017. Instead of ending the sentence at the word "review," the court added:

[O]r unless the commissioner or clerk determines an adult offender does not have the current or likely future ability to pay such costs. When the appellate court has entered an order that an offender is indigent for

13

purposes of appeal, that finding of indigency remains in effect, pursuant to RAP 15.2(f), unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency. The commissioner or clerk may consider any evidence offered to determine the individual's current or future ability to pay.

RAP 14.2. Additionally, RAP 15.2(f) reads:

A party and counsel for the party who has been granted an order of indigency must bring to the attention of the appellate court any significant improvement during review in the financial condition of the party. The trial court will give a party the benefits of an order of indigency throughout the review unless the appellate court finds the party's financial condition has improved to the extent that the party is no longer indigent.

RAP 15.2(f).

Sylvester Lopez argues this court's general order dated June 10, 2016 conflicts with the presumption of continued indigency that RAP 14.2 and RAP 15.2(f) embrace. Lopez further argues the general order places the burden of proof and production on Lopez to demonstrate continued indigency that Lopez contends contradicts the standards of RAP 14.2 and RAP 15.2. We disagree. Our general order effectuates the rule on appeal, rather than conflicts with the rules.

RAP 15.2(f) states a "appellate court will give a party the benefits of an order of indigency throughout the review unless the appellate court finds the party's financial condition has improved." The offender's filing a report as to continued indigency assists the appellate court in gaining information needed to determine improvement of the offender's financial circumstances. An appellate court cannot know whether the financial

14

condition has improved if it lacks data of the offender's current condition.

Under both RAP 14.2 and RAP 15.2(f), the burden of proof lies with the offender. RAP 15.2(f) provides, "A party . . . must bring to the attention of the appellate court any significant improvement during review in the financial condition of the party." The amendment to RAP 14.2 states "[t]he commissioner or clerk may consider *any evidence offered* to determine the individual's current or future ability to pay." (Emphasis added.) Thus, the language in the rules anticipates a defendant offering proof of financial conditions to the court or the clerk.

Sylvester Lopez alternatively argues that imposing appellate costs would violate the trial court's order of indigency that granted him a right to appeal at public expense. Nevertheless, while an order of indigency entered pursuant to RAP 15.2 allows a criminal defendant to pursue an appeal at public expense, the order does not prevent the State from attempting to recoup costs if the defendant loses the appeal. *State v. Obert*, 50 Wn. App. 139, 143, 747 P.2d 502 (1987).

Sylvester Lopez also argues that the appellate cost system undermines the attorney-client relationship and creates a conflict of interest because the Office of Public Defense only gets paid when its client loses. We note the remote possibility of such a conflict, but Lopez provides no legal authority, cites no empirical research, and presents no concrete examples of the attorney-client relationship being undermined or a conflict of interest actually occurring in an appeal. This court does not consider bald assertions

15

No. 34656-1-III
*State v. Lopez Sr.*

lacking cited factual and legal support.  RAP 10.3(a)(6); *West v. Thurston County*, 168

Wn. App. 162, 187, 275 P.3d 1200 (2012).

CONCLUSION

We affirm the trial court's denial of Sylvester Lopez's motion for remission.

Because Lopez filed a report showing continued indigency, we deny the State costs on

appeal.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:


_____
Siddoway, J.

_____
Lawrence-Berrey, J.