# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54248-0-II |
| Respondent, | |
| v. | |
| NEHEMIAH TALYNN LOSACCO, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Nehemiah T. Losacco appeals his eight convictions for violation of a no-contact order following a jury trial. Losacco argues that (1) his right to due process was violated because insufficient evidence supports his convictions; (2) the jury instruction defining knowledge violated his right to due process because it allowed the jury to find him guilty based on constructive knowledge rather than actual knowledge; (3) improper opinion testimony violated ER 701 by imposing on the province of the jury, (4) he received ineffective assistance of counsel because his counsel failed to object to this testimony; and (5) the trial court improperly imposed community custody supervision fees after finding him indigent. Losacco raises the second, third, and fifth claims for the first time on appeal, claiming a manifest constitutional error.

We hold that (1) Losacco's right to due process was not violated because sufficient evidence supports his convictions. We decline to decide whether (2) the jury instruction defining knowledge violates his due process because Losacco failed to preserve this issue and it is not a manifest constitutional error under RAP 2.5. We hold that (3) the opinion testimony does not

violate ER 701, and (4) Losacco did not receive ineffective assistance of counsel. Finally, we (5) remand to strike community custody supervision fees because the trial court expressed an intent to only impose legally mandatory fees. We affirm Losacco's convictions but remand to the trial court to strike the community custody supervision fees from the judgment and sentence.

FACTS

Losacco was named as the restrained party in a no-contact order which named Brandi St. Clair, Losacco's girlfriend, as the protected party. Both Losacco and his defense counsel signed the no-contact order. Losacco was charged with violating the order when he later contacted St. Clair at her trailer. Mitchell Nelson, who called himself St. Clair's stepfather, was also on the property and saw Losacco. Losacco had two prior convictions for violating court orders.

The State subsequently amended the information to include additional counts of violation of a court order based on eight telephone calls Losacco made to St. Clair while he was in jail. The amended information included eight counts of domestic violence court order violations and one count of assault in the fourth degree. A violation of a no-contact order becomes a felony if there are two prior convictions for violation of a court order. RCW 26.50.110(5). Losacco stipulated to his two prior convictions.

At trial, the State presented testimony from Nelson, Deputy Brett Karhu, who responded to the 911 call after Losacco contacted St. Clair at her trailer, and Corrections Deputy Torvald Pearson.

Deputy Pearson testified regarding the telephone calls that Losacco made to St. Clair while in jail. Deputy Pearson testified that inmates use a PIN number to make their telephone calls and

inmates sometimes use another inmate's telephone PIN. Inmates may do this if they do not have enough money on their account.

The evidence showed that eight telephone calls were made to the same telephone number between April 19 and June 18, 2019. Six of these calls were made using Losacco's assigned PIN, and two of them were made using other inmates' assigned PINs. At trial, the State played audio recordings from the eight calls. For the six calls made using Losacco's telephone PIN, the call begins with an automated message stating that it is a call from Nehemiah Losacco. There is a male voice and a female voice on all of the calls. During the first call, made on April 19, 2019, the male voice refers to the female as "Brandi." And during that same call, the female says that her father told her to "[c]ome home before [her] birthday." Ex. 6A, Verbatim Report of Proceedings (VRP) at 457. St. Clair's birthday is on April 20.

Deputy Pearson testified that he believed the male voice on the call was Losacco and the female voice on the call was St. Clair. He acknowledged that he had never met either Losacco or St. Clair, but he made his determination based on the following:

> After listening to multiple phone calls, during the course of the conversations I would hear the called party's name and match that up with other information that is available to me. Listening for the conversations, the type of topics that they discuss, the relationship between the called party and her family, just multiple different little pieces of information gathered up over probably a couple dozen different phone calls gave me the identification that I was looking for.

VRP at 405.

Nelson also identified the voices on the calls as Losacco and St. Clair:

[State]: And on that audio were you asked to identify the voices heard on that audio?

[Nelson]: I was.

[State]: And on each individual clip were you able to identify who the voices were?

3

[Nelson]:  Yes.

[State]:  And could you tell us on each individual clip who was the male voice?

[Nelson]:  Nehemiah.

[State]:  Mr. Losacco, the defendant?

[Nelson]:  Yes.

[State]:  And on those calls – or, sorry – on those audios were you able to identify the other voice?

[Nelson]:  Yes.

[State]:  And was it a female voice?

[Nelson]:  Yes.

[State]:  Who was that voice?

[Nelson]:  Brandi St. Clair.

VRP at 368-69.

Losacco maintained that he was unaware of the no-contact order.  Losacco argued that the signature on the no-contact order and his signature on his driver's license did not match, and thus, there was no evidence that Losacco was the person named on the order.  The State agreed that the signatures did not match, but it argued that there was still evidence to establish that Losacco was the one who signed the no-contact order based on the fact that the no-contact order was signed in open court in the presence of at least three other people.

The court gave the following jury instruction on the elements the State had to prove beyond a reasonable doubt in order to find Losacco guilty of violation of a no-contact order:

(1) That on or about [the various dates], there existed a no-contact order applicable to the defendant;

(2)  That the defendant knew of the existence of this order;

(3)  That on or about said date, the defendant knowingly violated a provision of this order;

(4)  That the defendant has twice been previously convicted for violating the provisions of a court order; and

4

      (5)  That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 28, 33-39.

      The court also gave an instruction defining "knowledge:"

> A person knows or acts knowingly or with knowledge with respect to a fact when he or she is aware of that fact. It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
>
> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

CP at 27. The State proposed this knowledge instruction in accordance with 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (5th Ed. 2021) (WPIC) 10.02, and Losacco did not object.

      The jury found Losacco guilty of all eight counts of violation of a no-contact order with special verdicts that Losacco and St. Clair were members of the same family or household, and that they were in a dating relationship. The court allowed Losacco to serve a prison chemical dependency treatment-based sentence.[1] At the sentencing hearing, the court stated,

> I'm going to make th[e] finding that you are indigent today, therefore I won't impose as to financial obligations only what the law requires I impose. In fact, the law forbids me to do anything more than the crime victim penalty assessment and the DNA database fee, so that's what I'm going to impose as far as legal financial obligations.

---

[1] RCW 9.94A.660

VRP at 13. After finding Losacco indigent, the court imposed a $500 crime victim assessment as well as supervision fees for community custody and crossed off the $200 criminal filing fee and $100 DNA fee, writing an LFO total of $500 in the judgment and sentence. The provision imposing community supervision fees appears as boilerplate language in a portion of the judgment and sentence separate from the other legal financial obligations.

Losacco appeals.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

Losacco argues that there is insufficient evidence to support his eight convictions because the State failed to prove that Losacco had actual knowledge of the existence of the no-contact order or that he knowingly violated a provision of it. We hold that Losacco's right to due process was not violated because sufficient evidence supports his eight convictions.

In a criminal case, the State must prove each element of a crime beyond a reasonable doubt to satisfy the due process demands of article 1, section 3 of the Washington State Constitution and the Fourteenth Amendment of the United States Constitution. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and we view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier

of fact and are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

A defendant is guilty of felony violation of a no-contact order if (1) a no-contact order exists applicable to the defendant, (2) the defendant is aware of the order, (3) the defendant knowingly violates the order, and (4) the defendant has at least two previous convictions for violating the provisions of a court order. RCW 26.50.110. A person acts with knowledge when:

> (i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
>
> (ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(b).

We have previously held that a certified copy of a no-contact order with the defendant's signature on it is sufficient to establish knowledge. *See State v. France*, 129 Wn. App. 907, 911, 120 P.3d 654 (2005). We held that evidence of a no-contact order with the defendant's signature on it established that he was aware of the order. *France*, 129 Wn. App. at 911.

Losacco argues that the no-contact order does not establish the circumstances under which he signed it, if it is, in fact, his signature. But the evidence established that Losacco either knew about the no-contact order or that a reasonable person in the same situation would know about the no-contact order. The no-contact order has Losacco's name and date of birth at the top. It states that it was done in open court in the City of Pacific Municipal Court in Losacco's presence. It lists St. Clair as the person Losacco is prohibited from coming into contact with. It was presented for the parties for signature, and both Losacco and his counsel signed the no-contact order. Further,

the very fact that Losacco was in jail for violating the no-contact order with St. Clair establishes that he was aware of the order when he later called St. Clair from jail. This exhibit provides sufficient evidence to establish knowledge.

Losacco also argues that the signature on the no-contact order does not match the signature on his driver's license, and thus, there is insufficient evidence that Losacco was present at the court hearing when the court entered the no-contact order. However, Losacco presented no evidence at trial, such as a handwriting expert, to establish that both signatures are not, in fact, his. And given that his name is on the no-contact order, along with his date of birth and St. Clair's name as the victim, and it was signed in the presence of his own attorney in open court, the evidence is sufficient to establish that Losacco did sign the no-contact order and was aware of it.

Because there is substantial evidence to establish that Losacco was aware of the no-contact order, and because we must view the evidence in the light most favorable to the State, we hold that sufficient evidence supports his eight convictions, and his right to due process was not violated. *See Cardenas-Flores*, 189 Wn.2d at 265-66.

## II. JURY INSTRUCTION

Losacco argues that the second paragraph of jury instruction number 8, derived from WPIC 10.02 and defining knowledge, violates his right to due process by permitting the jury to find him guilty based on constructive knowledge rather than actual knowledge of the no-contact order. We hold that Losacco failed to preserve this issue and it is not a manifest constitutional error under RAP 2.5, and thus, we decline to review this issue.

Generally, a defendant cannot challenge a jury instruction on appeal if the defendant did not object to the instruction below. *State v. Salas*, 127 Wn.2d 173, 181-82, 897 P.2d 1246 (1995).

An exception to this rule permits review of an unpreserved error if it involves a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). Losacco did not object to the second paragraph of jury instruction number 8 defining "knowledge." Therefore, we must determine whether the purported error involved a manifest error affecting a constitutional right.

As long as the instructions properly inform the jury of the elements of the charged crime, any error in defining the terms used in the elements is not of constitutional magnitude. *State v. Stearns*, 119 Wn.2d 247, 250, 830 P.2d 355 (1992). Even an error defining technical terms does not rise to the level of constitutional error. *State v. Gordon*, 172 Wn.2d 671, 677, 260 P.3d 884 (2011).

Our Supreme Court upheld WPIC 10.02 in a similar challenge in *State v. Leech*, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), *abrogated on other grounds by In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002). The court held that WPIC 10.02 does not relieve the State of its burden to prove actual knowledge. *See Leech*, 114 Wn.2d at 710. It merely permits, but does not require, the jury to find actual knowledge based on circumstantial evidence. *Leech*, 114 Wn.2d at 710. Such an inference is constitutionally permissible. *Leech*, 114 Wn.2d at 710. We are bound by the Supreme Court's explicit holding that WPIC 10.02 correctly describes the law. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997) (Court of Appeals is bound by decisions of the Washington Supreme Court).

We hold that this alleged error is not a manifest constitutional error under RAP 2.5. The jury was properly instructed on each element of the charged crimes and the jury instruction regarding knowledge was an accurate statement of the law. Accordingly, we decline to further review this issue.

### III. OPINION TESTIMONY

#### A. LEGAL PRINCIPLES

In general, we will not consider issues raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *see* RAP 2.5(a). But a party can raise an error for the first time on appeal if it is a manifest error affecting a constitutional right. *Kirkman*, 159 Wn.2d at 926. The defendant must show that the constitutional error affected his or her rights at trial, thereby demonstrating the actual prejudice that makes an error "manifest" and allows review. *Kirkman*, 159 Wn.2d at 926-27.

"On appeal, a party may not raise an objection not properly preserved at trial absent manifest constitutional error. We adopt a strict approach because trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (plurality opinion) (citations omitted); RAP 2.5(a)(3).

Lay witnesses may give opinions or inferences based upon rational perceptions that help the jury understand the witness's testimony and are not based upon scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Impermissible opinion testimony about the defendant's guilt violates the defendant's constitutional right to a jury trial, which includes a right to an independent determination of the facts by the jury. *Kirkman*,

159 Wn.2d at 927. "Opinions on guilt are improper whether made directly or by inference." *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

In determining the admissibility of opinion testimony, the trial court "will consider the circumstances of the case, including the following factors: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." *Quaale*, 182 Wn.2d at 199-200. Some topics are inappropriate for opinion testimony in criminal trials, including personal opinions as to the defendant's guilt, the intent of the accused, or the veracity of witnesses. *Quaale*, 182 Wn.2d at 200. A law enforcement officer's opinion testimony may be especially prejudicial because the "officer's testimony often carries a special aura of reliability." *Kirkman*, 159 Wn.2d at 928.

B. ISSUE NOT PRESERVED ON APPEAL

Losacco argues for the first time on appeal that Deputy Pearson's testimony identifying Losacco's and St. Clair's voices in the audio recordings improperly invaded the province of the jury in violation of ER 701, and that this was a manifest constitutional error under RAP 2.5(a)(3). We hold that this is not a manifest constitutional error under RAP 2.5(a)(3) and thus, we decline to address the issue.

Losacco did not object to Deputy Pearson's testimony identifying Losacco's and St. Clair's voices on the jail telephone audio recordings. Therefore, Losacco did not preserve this issue. However, because an explicit or "nearly explicit" opinion on the defendant's guilt can infringe on a defendant's constitutional rights, we must determine whether the alleged error is a manifest constitutional error. *Kirkman*, 159 Wn.2d at 936; RAP 2.5(a)(3).

C. Deputy Pearson's Testimony Not Manifest Constitutional Error

"Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. To show an alleged error falls within the narrow exception of RAP 2.5(a)(3), an appellant must show that the asserted error is manifest. *City of Seattle v. Heatley*, 70 Wn. App. 573, 585, 854 P.2d 658 (1993). "'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.'" *Heatley*, 70 Wn. App. at 585 (quoting *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992)). This requires an explicit or nearly explicit witness statement on an ultimate issue of fact. *Kirkman*, 159 Wn.2d at 936.

In *Heatley*, Division One of this court noted that an opinion that encompasses ultimate factual issues supporting a conclusion that the defendant is guilty does not necessarily make that testimony an improper opinion on guilt constituting a manifest constitutional error. 70 Wn. App. at 579, 583. There, the court held admissible an officer's testimony that Heatley was intoxicated where that testimony was based on the officer's observations of Heatley's physical appearance, conduct, and field sobriety tests. *Heatley*, 70 Wn. App. at 576, 579.

Here, like the officer in *Heatley*, Deputy Pearson testified about his own perceptions based on the jail telephone audio recordings. He testified that after listening to "a couple dozen" recordings, he could identify Losacco's and St. Clair's voices based in part on "the conversations, the type of topics that they discuss, the relationship between the called party and her family." VRP at 405. From Deputy Pearson's statements, it is clear that he was testifying about his own observations rather than about Losacco's guilt.

12

Deputy Pearson did not testify to the ultimate issue in the case, which was whether Losacco was aware of the no-contact order and knowingly violated it. Instead, he testified that he identified Losacco and St. Clair as the individuals on the eight jail telephone audio recordings at issue. Deputy Pearson expressed no opinion as to whether Losacco knew he was violating the no-contact order.

Because Deputy Pearson did not provide any explicit or nearly explicit opinion testimony on the ultimate issue of Losacco's guilt, Losacco fails to show manifest error affecting a constitutional right. Thus, we hold that Losacco has failed to preserve this issue for appeal, and we decline to address this issue.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Losacco argues that even if we do not believe it was a manifest constitutional error, he received ineffective assistance of counsel because his defense counsel failed to object to this testimony. We hold that Losacco did not receive ineffective assistance of counsel.

Ineffective assistance of counsel is a constitutional error arising from the Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution. *See State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Estes*, 188 Wn.2d at 458.

Counsel's conduct is not deficient if it can be characterized as a legitimate trial strategy, but the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011).

Here, Losacco cannot demonstrate that his counsel performed deficiently because there was no basis for his counsel to object to Deputy Pearson's testimony. As explained above, Deputy Pearson did not improperly testify as to Losacco's guilt; rather, he testified regarding his own observations and the conclusions he reached from those observations—that the voices on the jail audio recordings were those of Losacco and St. Clair.

Even if Losacco's counsel's performance was deficient, Losacco fails to establish prejudice. Losacco points to no evidence that if his counsel had objected, the trial court would have granted his objection. And Nelson also testified that the voices on the audio recordings were Losacco and St. Clair. Given the substantial evidence, Losacco cannot show that if the court had granted an objection to Deputy Pearson's testimony, that the outcome of the trial would have been different.

Accordingly, we hold that Losacco did not receive ineffective assistance of counsel.

## IV. COMMUNITY CUSTODY SUPERVISION FEES

### A. AGGRIEVED PARTY

Preliminarily, the State argues that Losacco is not an aggrieved party under RAP 3.1 because he has only challenged a hypothetical fee that *may* be imposed at a later date. We disagree with the State and hold that Losacco is an aggrieved party under RAP 3.1.

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. "'An aggrieved party is one who has a present, substantial interest, as distinguished from a mere

expectancy, or . . . contingent interest in the subject matter.'" *State v. Shirts*, 195 Wn. App. 849, 854, 381 P.3d 1223 (2016) (alternation in original) (internal quotation marks omitted) (quoting *State v. Mahone*, 98 Wn. App. 342, 347, 989 P.2d 583 (1999), *abrogated by Shirts*, 195 Wn. App. at 849).

In *Mahone*, we declined review on the merits because the State had not yet sought to enforce the legal financial obligations (LFOs) and the defendant had not shown that he was unable to pay the LFOs. Therefore, we held that the defendant was not an aggrieved party. 98 Wn. App. at 347-48. We reasoned that until the State sought enforcement and the court determined the defendant had the ability to pay, "any attempt to determine whether payment w[ould] create a hardship [wa]s mere speculation." *Mahone*, 98 Wn. App. at 348.

In *Shirts*, we acknowledged that applying *Mahone* to the facts of that case would result in us holding that the defendant was not an aggrieved party. 195 Wn. App. at 855. However, we ultimately held that the defendant was an aggrieved party because of the "recognized and real impacts LFOs have on offenders," even if the State never sought enforcement. *Shirts*, 195 Wn. App. at 856.

As in *Shirts*, applying *Mahone* to the facts of this case would result in us holding that Losacco is not an aggrieved party. But we apply *Shirts* and hold that Losacco is an aggrieved party because even the possibility of having to pay additional fees may constitute a hardship. Therefore, we decide the issues on the merits.

B. PRESERVATION

The State argues that we should decline review because Losacco failed to preserve this issue. We exercise our discretion to reach the merits.

"The imposition and collection of LFOs have constitutional implications and are subject to constitutional limitations." *State v. Duncan*, 185 Wn.2d 430, 436, 374 P.3d 83 (2016). A defendant who fails to object to the imposition of LFOs at sentencing, however, is not automatically entitled to review. RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015). However, RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors and to reach the merits of the case.

Because Losacco is an aggrieved party, as discussed above, we exercise our discretion to reach the merits even though Losacco did not object to the imposition of the community custody supervision fee at sentencing.

C. COMMUNITY CUSTODY SUPERVISION FEES

Losacco argues that the trial court erred by imposing the community custody supervision fees after finding him indigent. The State argues that supervision fees are not "costs" within RCW 10.01.160, and thus, are not dependent upon Losacco's indigency, and thus, the court did not err. Because the trial court intended to only impose legally mandated LFOs but failed to strike the community custody supervision fee, we remand with instructions for the court to do so and amend the judgment and sentence accordingly.

A trial court may not order a defendant to pay costs if the defendant is indigent as defined in RCW 10.101.010(3)(a) through (c). RCW 10.01.160(3). Additionally, RCW 9.94A.760(1) provides that the court "may not order an offender to pay costs as described in RCW 10.01.160 if the court finds that the offender at the time of sentencing is indigent." RCW 10.01.160(2) defines "cost" as "limited to expenses specifically incurred by the state in prosecuting the defendant or in administering the deferred prosecution program under chapter 10.05 RCW or pretrial supervision."

Recently, in *State v. Spaulding*, this court addressed the same issue raised by Losacco here. 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020). Spaulding, an indigent defendant, challenged the imposition of a community custody supervision assessment under RCW 9.94A.703(2)(d). *Spaulding*, 15 Wn. App. 2d at 536. We determined:

> [T]he supervision fee is not a "cost" under RCW 10.01.160(3) just because it is a discretionary financial obligation. RCW 10.01.160(2) defines "cost" as an expense specially incurred by the State to prosecute the defendant, to administer a deferred prosecution program, or to administer pretrial supervision. The supervision fee is not a "cost" under this definition. Therefore, RCW 10.01.160(3) does not prohibit the imposition of supervision costs on an indigent defendant.
>
> However, we acknowledge that the imposition of LFOs on indigent defendants can create a significant hardship. See *State v. Blazina*, 182 Wash.2d 827, 835-37, 344 P.3d 680 (2015). The court in *State v. Clark* emphasized that there are strong policy arguments in favor of considering an indigent defendant's ability to pay discretionary LFOs even when such consideration is not required. 191 Wash. App. 369, 376, 362 P.3d 309 (2015). And under RCW 9.94A.703(2)(d), the trial court has discretion to waive the supervision fee.

*Spaulding*, 15 Wn. App. 2d at 536-37. Accordingly, we "encourage[d] the trial court on remand to reevaluate the imposition of the supervision fee." *Spaulding*, 15 Wn. App. 2d at 537.

Here, as in *Spaulding*, the court was not prohibited from imposing the supervision fee on Losacco. However, the record clearly shows that the court intended to impose only the $500 criminal victim penalty assessment while waiving all discretionary LFOs. VRP (Nov. 1, 2019) at 13 ("I'm going to make that finding that you are indigent today, *therefore I won't impose as to financial obligations only what the law requires what I impose*.") (emphasis added).

Accordingly, it appears the trial court expressed an intent to apply only legally mandatory fees but inadvertently failed to strike the community custody supervision fee. We remand for the trial court to strike the community custody supervision fees consistent with its expressed intent.

17

CONCLUSION

We affirm Losacco's convictions but remand to the trial court to strike the community custody supervision fees from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

VELJACIC, J.