# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LOST LAKE RESORT INVESTMENT GROUP TWO, LLC, a Washington limited liability company; LOST LAKE RESORT, LLC, a Washington limited liability company; BRENT McCAUSLAND; and DAVID BLOCK, | No. 53777-0-II |
| Respondents, | |
| v. | |
| RV RESORT MANAGEMENT, LLC, a Washington limited liability company; LOST LAKE RESORT INVESTMENT GROUP, LLC, a Washington limited liability company; LEE WILSON and LORI WILSON, husband and wife; JEFFREY GRAHAM, a single man; and JOHN S. MILLS, | UNPUBLISHED OPINION |
| Appellants. | |

VELJACIC, J. — The events giving rise to this appeal primarily involve a dispute over the ownership of several promissory notes and associated deeds of trust among the Lost Lake Resort Investment Group Two, LLC (LLRIG2), Lost Lake Resort, LLC (LLR), David Block, and Brent McCausland (collectively grouped as the LLRIG2 Plaintiffs), Lee and Lori Wilson, Jeffrey Graham, RV Resort Management, LLC (RVRM), and attorney John Mills.

Seven years of litigation culminated in a jury trial on LLRIG2 Plaintiffs' claims of conspiracy and tortious interference with a business expectancy against the Wilsons, Graham, and Mills, as well as an associated bench trial wherein the same plaintiffs successfully sued Mills for malpractice.

The Wilsons appeal the trial court's dismissal of their counterclaims against Block and McCausland for breach of fiduciary duty and of the duty of loyalty. The Wilsons also argue that the trial court erred in denying their motion to disqualify the LLRIG2 plaintiffs' attorneys based on a conflict of interest.

Mills appeals the court's conclusion that he committed malpractice and also appeals the damages on that claim. Mills further asserts that the court erred in denying the motion to disqualify LLRIG2 Plaintiffs' attorneys and in modifying a bifurcation order prior to trial. Graham joins the Wilsons and Mills on several of their arguments.

We decline to reach attorney Mills's assignments of error because he failed to provide an adequate record to enable review. We conclude that Graham is not an aggrieved party under RAP 3.1 and decline to address arguments on appeal. We further conclude that the Wilsons failed to designate the challenged orders in their notice of appeal and therefore decline to reach their assignments of error.

We affirm.

FACTS

This appeal is the second before this court relating to the same lawsuit, which arose from a land development project. The first appeal resolved the ownership of two promissory notes and a deed of trust (DOT) (Sterling notes and DOT) which encumbered an 85–acre parcel. *See LLRIG TWO v. RV Resort Management*, No. 49069-2-II, slip op. (Wash. Ct. App. July 26, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2049069-2-II%20Unpublished%20Opinion.pdf. In this second appeal, we are asked to review judgments of

malpractice and tortious interference with business expectancy arising from the underlying dispute over ownership of the Sterling notes and DOT. Also at issue is the transfer and ownership of two other promissory notes and associated DOTs (the Wilson note and DOT, and the Resort note and DOT).

I.      EVENTS PRIOR TO LITIGATION[1]

Given the long history of this case, a historical overview is helpful. Through his two LLCs, Jeff Graham had indirect control over, and sought to develop, two parcels, the 85–acre parcel owned by LLR, and an adjoining 56–acre parcel owned by Lost Lake Development, LLC (LLD). In 2010, the Wilsons held a DOT on the 56-acre parcel, which secured a promissory note (the Wilson note and DOT). Also in 2010, Lost Lake Resort Investment Group, LLC (LLRIG)[2] as security for another promissory note, held a DOT securing that note against the same 56–acre parcel (the Resort note and DOT). Later in 2010, the Wilsons assigned their first priority note and DOT to LLRIG in return for a 49 percent interest in LLRIG. LLRIG now had ownership of the two notes and DOTs to the 56-acre parcel, while it had members consisting of Block, McCausland, the Wilsons, and the two other investors. In all, Graham had borrowed approximately $3.3 million against the properties to fund their development.

But Graham filed for bankruptcy in 2010. As noted above, the 85–acre parcel was subject to the Sterling notes and DOT. Mills, an attorney and friend of Graham, represented a group of unsecured creditors including the Wilsons, Block, and McCausland in the bankruptcy proceedings. Mills did not represent LLRIG. Simultaneously, Mills was advising Graham of the strategies and

---

[1] The facts in this section are largely taken from this court's prior opinion, referenced herein.

[2] At this point, LLRIGs members were McCausland, Block, and two other investors whose names are immaterial, as they fortuitously avoided this litigation.

activities in the bankruptcy court and was coordinating actions by Graham and others for Graham's benefit. Mills's goal was ostensibly to restore the 85-acre parcel to Graham's control.

In late 2011, Graham, acting as an agent of the Wilsons, instructed Mills to make several offers, all ultimately unsuccessful, to Sterling Bank to purchase the Sterling notes and DOT. Mills, at the request of Graham, eventually made an offer to Sterling Bank on behalf of LLRIG to purchase the Sterling notes and DOT. Graham was not an investor or member of LLRIG. Mills had no authority, permission, or authorization from any member of LLRIG to make an offer, nor did he consult with any member of LLRIG after Graham's request. At the time, LLRIG had no money, and its sole assets were the Wilson note and the Resort note secured by the corresponding DOTs on the 56-acre parcel.

Sterling accepted Mills's "offer" (on behalf of LLRIG) to purchase the Sterling notes and DOT. Mills then contacted Block and McCausland, not LLRIG, to discover whether they wanted to purchase the Sterling notes and DOT. Block and McCausland told Mills that they wanted to buy the Sterling notes and DOT individually or in a newly created LLC, which they would own exclusively. However, Mills informed them that Sterling would only sell the notes and DOT to LLRIG.

Mills advised Block and McCausland that they could purchase the Sterling notes and DOT using their own money but in the name of LLRIG, and that they could then transfer the Sterling notes and DOT from LLRIG to the newly created LLC. Mills did not advise Block or McCausland to schedule a meeting of all LLRIG members or take any other action that would definitively allow a transfer of the Sterling notes and DOT. This is significant because, as the trial court found, obtaining permission from the remaining members would preclude a future claim of breach of

4

fiduciary duty or breach of the duty of loyalty and would also avoid any potential remedy that would reverse the transaction should a court find a breach.

Block and McCausland spoke with only the two other LLRIG investors, and obtained their approval to transfer the Sterling notes and DOT to the newly created LLC. Mills created the new LLC, LLRIG2, which was solely owned by Block and McCausland.

Mills, with Graham's assistance, then prepared documents to assign and transfer the Sterling notes and DOT to LLRIG2. Graham advised Mills that the assignment of the DOT was in a form that would not allow it to be recorded. Despite this, Mills did not correct the form. Either Mills or Graham prepared a Deed in Lieu of Foreclosure from LLR to LLRIG2, so that Block and McCausland would receive title to the 85–acre parcel. At some point, Block and McCausland also purchased LLR and LLD from the bankruptcy trustee. Subsequently, Mills withdrew from representing any of the parties, including the Wilsons.

In August 2013, the Wilsons sought to purchase the remaining 51 percent interest in LLRIG, including that of Block and McCausland. As part of the purchase, they agreed not to sell or transfer any interest in LLRIG until all of their payments for the sale were made. Under this agreement, the Wilsons owned 100 percent of the interest in LLRIG. At that time, LLRIG appeared to own the Wilson note and DOT and the Resort note and DOT, which encumbered the 56-acre parcel.

Shortly thereafter, before completing all payments, and in apparent contravention of the purchase agreement, the Wilsons claimed to have transferred 100 percent of their interest in LLRIG to a new LLC, RVRM, which was owned by the Wilsons and Graham's mother. A representative of RVRM (it is unknown precisely whom) contacted Mills and requested that he give them the original Sterling notes and DOT that he still held. Without discussing the request

with Block or McCausland, Mills then tendered the original Sterling notes and DOT to either the Wilsons or RVRM (this is also unclear). Although they were the property of LLRIG2, Mills had never delivered the notes and DOT to that entity.

RVRM commenced a non-judicial foreclosure on the 85-acre parcel, which was possible only because it was the holder of the original Sterling notes and DOT.

## II.  THE RESULTING LITIGATION

Shortly after the non-judicial foreclosure begun, LLRIG2, LLR, Block, and McCausland brought suit against RVRM, LLRIG, the Wilsons, and Mills.[3]  They sought a declaratory judgement that LLRIG2 owned the Sterling notes and DOT. They also sued Mills for malpractice and sued the Wilsons for tortious interference with business expectancy. The Wilsons counterclaimed against Block and McCausland for breach of fiduciary duty, breach of loyalty, and other claims. Mills moved to bifurcate the claim of malpractice against him from the claims regarding ownership of the Sterling notes and DOT. The court granted the motion, ordering that the claims against Mills and his counterclaims be bifurcated, with the trial to be held after the underlying claims were resolved. LLRIG2 then amended its complaint to add claims of tortious interference with business expectancy and civil conspiracy against the Wilsons, Graham, and Mills.

In early 2014, Block, McCausland, and the two other investors filed a lawsuit against the Wilsons and RVRM in Pierce County, seeking a return of the 51 percent interest in LLRIG based on the Wilsons' breach of the purchase agreement. The Wilsons raised the affirmative defense of breach of fiduciary duty and breach of the duty of loyalty against Block and McCausland. On the

---

[3] At this point, the Wilsons had a 100 percent ownership interest in LLRIG per the purchase agreement.

6

morning of trial in March 2015, the parties reached a settlement agreement returning the parties to their original status in LLRIG: Block, McCausland, and the other two investors with 51 percent and the Wilsons with 49 percent.[4] The settlement agreement provided in part:

> d. Each of the parties to this agreement desires to avoid the uncertainties and costs of litigation, to settle all claims in Pierce County Superior Court cause number l4-2-06976-1 as set forth in this agreement, and to also limit the remaining issues to be resolved by the parties to this agreement in further litigation.
>
> . . . .
>
> 5. Each of the parties to this agreement agrees that to simplify resolution of the remaining issues between them related to the ownership of two Sterling Bank notes secured by a deed of trust . . . will be determined based upon the facts and events that had occurred as of April 1, 2013[.]
>
> . . . .
>
> 6. The validity of the transfer of 390 Lost Lake [LLRIG] ownership units by Wilson to RV shall be determined in Thurston County Superior Court Cause No. 13-2-01982-2.

CP 432-33. The Pierce County superior court then dismissed all claims of all parties with prejudice.

After the settlement, Graham counterclaimed in the instant case for breach of contract, civil conspiracy to defraud, constructive trust, unjust enrichment, and other claims. He also crossclaimed against LLRIG for various causes of action, although it is unclear which claims applied to LLRIG.

The LLRIG2 plaintiffs filed a motion for partial summary judgment, which the court granted, concluding that LLRIG2 owned the Sterling notes and DOT. The court also granted LLRIG2 plaintiffs' motion to dismiss Graham's claims of fraud. The trial court ordered that the

---

[4] Because the Wilsons no longer held a majority interest in LLRIG, Osinski, their attorney withdrew as counsel representing LLRIG. He continued to represent RVRM and the Wilsons. Shortly after, RVRM and the Wilsons filed a motion to permit the appointment of counsel for [LLRIG]. The motion was denied.

Wilsons owned 49 percent of LLRIG, and that the Wilsons' attempted transfer of LLRIG's assets to RVRM was "void and of no effect." Clerk's Papers (CP) at 513. On interlocutory appeal, we affirmed the trial court's ruling. *LLRIG TWO*, No. 49069-2-II slip op. at 14.

In September 2016, LLD, Block, and McCausland brought suit against RVRM, the Wilsons, and LLRIG, seeking to enjoin RVRM from commencing a non-judicial foreclosure on a note and DOT encumbering the 56–acre parcel. They also sought declaratory judgment that the note at issue was fraudulent and sought to quiet title to the 56-acre parcel.

The Wilsons, at this point minority members of LLRIG, counterclaimed and argued as a derivative action "on behalf of LLRIG," that they were entitled to a judgment of foreclosure. CP at 914.[5] In December 2017, the trial court granted the Wilsons' motion to consolidate that foreclosure case, cause number 16-2-03686-34, with the original Thurston County case filed in 2013.

LLRIG2 plaintiffs moved for summary judgment dismissal of the Wilsons' counterclaims of breach of fiduciary duty and breach of the duty of loyalty. They argued that because the Wilsons brought the same claims in the Pierce County case, which was dismissed with prejudice after the settlement agreement, the counterclaims were barred by *res judicata*. The court granted the motion and entered an order dismissing those counterclaims, determining that "[a]ny question of whether the issue of fiduciary duty was part of the subject matter of the [Pierce County] litigation was definitively answered by the Wilson[s'] pleadings and motions in that litigation raising that issue." CP at 322.

---

[5] The court later determined that the Wilsons could not bring a derivative suit because it was improperly pled, and because the Wilsons failed to meet the elements required to maintain a derivative suit.

On February 4, 2019, Daniel Kyler and Bart Adams, attorneys for the LLRIG2 plaintiffs, submitted a notice of appearance for LLRIG under cause number 16-2-03686-34. A few days later, the Wilsons brought a motion to disqualify counsel for all cause numbers, arguing that Kyler and Adams were impermissibly conflicted because they had represented LLRIG against Graham's claims and now were opposing LLRIG in the Wilsons' derivative claims. The court granted LLRIG2 plaintiffs' motion for summary judgment of dismissal of all of Graham's remaining claims. The court then denied the motion to disqualify counsel.

The claims for tortious interference with a business expectancy against Graham, the Wilsons, and Mills were tried to a jury.[6] The jury found that all defendants conspired to commit and committed tortious interference and awarded damages to LLRIG2 plaintiffs. After the jury's verdict, the legal malpractice claim against Mills was heard before the same trial judge. The parties agreed that the court could consider all of the testimony, evidence, and exhibits from the trial for tortious interference.[7] The court entered findings of fact and conclusions of law and rendered a judgment against Mills in the amount of $454,268.00 for malpractice.

The court determined that Mills violated the standard of care and practice as an attorney by: failing to obtain a waiver of a conflict of interest; failing to provide plaintiffs Block and McCausland informed consent as to his representation and the conflicts at issue between them and Graham and Wilson; failing to get consent of LLRIG members to allow purchase in the name of LLRIG while knowing that LLRIG would not be the ultimate owner of the Sterling notes and DOT; failing to undertake a meeting of LLRIG to obtain the consent of the various members to

---

[6] A significant portion of the report of proceedings from the beginning of the trial is not in the record, including all of Lori Wilson's testimony and a large portion of the direct examination of Lee Wilson.

[7] The report of proceedings from Mills's bench trial is not in the record.

9

the course of action proposed by Mills in transferring the Sterling notes and DOT to LLRIG2; purchasing the Sterling Notes and DOT without advising or informing Block and McCausland of the potential conflict and risk created between them and other LLC members, including the Wilsons; sharing client confidences with Graham without Block's and McCausland's consent; inadequately undertaking the legal steps necessary to transfer the Sterling notes and DOT to LLRIG2 without creating a risk of controversy and leaving the DOT unassigned; utilizing Graham to prepare legal documents and file and record documents relating to LLRIG2 activities; and giving the original Sterling notes and DOT to a third person without LLRIG2's consent or authorization.

The court concluded that Mills's malpractice resulted in "actual damage and pecuniary loss of additional interest carry and accounting fees already awarded by the jury in this cause associated with . . . Mills['s] conduct in the amount of $67,000." CP at 4655.

It also made the following conclusion of law:

> As a direct and proximate result of . . . Mills' conduct . . . plaintiffs LLRIG TWO, LLC, David Block and Brent McCausland suffered damages and consequential loss by way of expending attorney's fees to prosecute and determine the ownership of the Sterling Notes and Deed of Trust, and defend against defendants Wilson[s'] claims of breach of fiduciary duty and breach of duty of loyalty in the amount of $448,603. The Court finds that said fees incurred were reasonable, customary and necessarily incurred as a result of . . . Mills' violation of the standard of care.

CP at 4655.

The Wilsons, Graham, and Mills appeal. The Wilsons' notice of appeal sought review of the $117,000.00 judgment entered against the three defendants on the tortious interference claim.

10

Graham sought review of the same judgment, and "any other orders entered that affected [his] claims." Notice of Appeal, No. 53777-0-II, at1 (July 22, 2019).[8]

ANALYSIS

I.    MILLS

A.    Attorney Fees as Damages for Malpractice

Mills argues that the trial court erred in awarding attorney fees as damages because Washington's ABC rule allowing attorney fees as damages in civil litigation is inapplicable here.[9] Mills's briefing on the issue of attorney fees contains only one citation to the record. RAP 10.3(a)(6) directs each party to supply, in his brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Additionally, RAP 10.4(f) requires that a reference to the record should designate the page and part of the record. Counsel's failure to cite to the record and otherwise follow the Rules of Appellate Procedure is an egregious violation of the rules and is fatal to the appeal. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 819, 828 P.2d 549 (1992).

Particularly troublesome is that Mills makes argument regarding the ABC rule, but the trial court's findings of fact and conclusions of law do not mention the ABC rule. Moreover, the report of proceedings of the malpractice trial have not been provided to us on appeal. We therefore cannot know whether the damages award made by the trial court consisted of attorney fees, or damages in tort. We cannot discern whether the damages were solely from the causes of action filed by the Wilsons in this litigation, the causes of action raised in the preceding lawsuit, causes

---

[8] Mills unfortunately passed away while this appeal was pending. On August 10, 2021, Arthur Parks filed a notice of appearance and substitution of parties pursuant to RAP 3.2 in order to represent Mills's estate in this appeal. *See* Notice of Appearance, No. 53777-0-II, at 1-2 (Aug. 10, 2021).

[9] We note that the trial court did not mention the ABC rule as a basis for its award.

of action by other Plaintiffs that Block and McCausland were required to defend against, or any combination of the above. We are therefore unable to meaningfully address this issue. *Rhinevault v. Rhinevault*, 91 Wn. App. 688, 692, 959 P.2d 687 (1998) ("the appellant bears the burden of complying with the [RAPs] and perfecting his record on appeal. . . The court may decline to reach the merits of an issue if this burden is not met.").

B.     Damages for Malpractice

Mills asserts that he cannot be held liable for malpractice because there are no damages. Aside from his argument that attorney fees are not appropriate damages in a malpractice action, an argument we decline to reach above, Mills also argues that the value of the Notes "was not shown by the plaintiffs to be less than the fees incurred" in litigation. Br. of Appellant Mills at 30.

Mills fails to assign error to, or otherwise point to portions of the record that would undermine the court's conclusion that Mills's malpractice resulted in "actual damage and pecuniary loss of additional interest carry and accounting fees already awarded by the jury in this cause associated with [Mills'] conduct in the amount of $67,000." CP at 4655. Therefore, we also decline to reach this issue. RAP 10.3(a)(6).

C.     Offset of Damages

Mills argues that the trial court erred in calculating malpractice damages because it failed to offset the alleged damages with the value of the Sterling Notes that LLRIG2 respondents "acquired at a steep discount due only to the work of [Mills]." Br. of Appellant Mills at 27.

LLRIG2 argues that Mills cites no authority supporting his argument that he should receive an offset against the damages that resulted from his malpractice and he also presents no evidence to establish that the Sterling Notes were acquired for less than fair market value. We agree with LLRIG2.

12

The entirety of Mills's argument is a citation to the statutory definition of economic damages and the assertion that "[b]efore a fair amount of 'damages' can be ascertained, the court needed to [start] with the huge value of the sterling notes recovered by [LLRIG2]due to the work of their attorney." Br. of Appellant Mills at 27.

"'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)); *see* RAP 10.3(a)(6). And "bald assertions lacking cited factual and legal support," will not be addressed on appeal. *West*, 168 Wn.2d at 187. Accordingly, we decline to reach this argument.

D.      Disqualification of Attorneys

Mills argues that the trial court erroneously allowed Kyler and Adams to represent both LLRIG and LLRIG2 at trial. He asserts that the conflict is relevant to him because Kyler and Adams "abandoned all equitable claims of [LLRIG] to a beneficial or equitable or trust interest in the Sterling Notes, leaving the erroneous impression that all litigation on those issues was specious and without merit." Br. of Appellant Mills at 27.

Mills is not the aggrieved party, and thus not entitled to argue this issue on appeal.

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. "'An aggrieved party is one who has a present, substantial interest, as distinguished from a mere expectancy, or . . . contingent interest in the subject matter.'" *State v. Shirts*, 195 Wn. App. 849, 854, 381 P.3d 1223 (2016) (internal quotation marks omitted) (quoting *State v. Mahone*, 98 Wn. App. 342, 347, 989 P.2d 583 (1999)).

Mills fails to identify any present, substantial interest in whether Kyler and Adams represented LLRIG. Mills is not a member of and has no pecuniary interest in LLRIG. Mills

argues that the Kyler and Adams' failure to assert a claim on LLRIG's behalf gave the jury an "erroneous impression that all litigation on those issues was specious" but fails to explain what effect, if any, that had on the claims against him. *See* Br. of Appellant Mills at 27. Any interest in an impression given to the jury about hypothetical, unasserted claims is not present or substantial. Mills is not an aggrieved party and therefore cannot challenge the court's failure to disqualify Kyler and Adams on appeal.

E.    Bifurcation

Mills argues that the trial court erred in modifying the bifurcation order on the eve of trial and forcing him to switch from a bench trial to a jury trial with only days' notice. LLRIG2 argues that the court did not abuse its discretion and did not modify any kind of bifurcation because the conspiracy claim was part of the amended complaint, and so the bifurcation did not apply to it.

As noted above, RAP 10.3(a)(6) directs each party to supply, in their brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." "We do not consider conclusory arguments that are unsupported by citation to authority." *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Mills fails to provide any citation to authority or to the record to support this argument, accordingly we do not consider his argument. Accordingly, we decline to address the issue.

II.    GRAHAM AND THE WILSONS

The Wilsons and Graham appear to argue that the court erred by denying the motion to disqualify plaintiffs' counsel. They contend that Kyler and Adams were attorneys for LLRIG and its opponents. They also argue that the court erred when it declared in the order denying the motion to disqualify that "'if there is [a conflict,] estoppel applies.'" Br. of Appellants Wilson/Graham at 30.

Graham and the Wilsons also argue that the trial court erred in granting LLRIG2's motion for summary judgment dismissing the Wilsons' claims for breach of fiduciary duty and the duty of loyalty based on res judicata. They contend that the CR 2A agreement reserved those issues for later litigation, and res judicata cannot be used to override that agreement. They also argue that LLRIG2 waived res judicata.

A.     Graham

As a preliminary matter, LLRIG2 appears to argue that Graham is not an aggrieved party who may appeal the issues argued in the Wilson/Graham joint brief.    We agree that Graham is not an aggrieved party.

Again, RAP 3.1 provides that, "Only an aggrieved party may seek review by the appellate court." Graham's notice of appeal designates the judgment on the jury verdict as well as "any other orders entered that affected [his] claims" for our review. Notice of Appeal, No. 53777-0-II. However, Graham has no interest in the orders that the joint Wilson/Graham briefing assigns error to.

First, Graham's initial brief does not address what interest he has in the court's dismissal of the Wilsons' motion to disqualify Kyler and Adams, and the record does not support or indicate any interest. Graham's argument in his reply brief merely recites the same interest that Mills claimed—the unexplained effect of an "erroneous impression that all litigation on [LLRIG2's claims] was specious." *See* Br. of Appellant Mills at 27. Graham simply asserts that, "If Mills has standing on this issue, so does Graham, on the same grounds." Reply Br. of Appellant Graham/Wilsons at 6. This is not a present, substantial interest or even a contingent interest. *See Shirts*, 195 Wn. App. at 854.

Second, Graham does not assert any interest in the dismissal of the Wilsons' claims for breach of fiduciary duty and duty of loyalty. He is not a member of LLRIG and is owed no duty by Block and McCausland. He otherwise asserts no interest in the Wilsons' claims that were dismissed by the trial court based on *res judicata*. We, therefore, only address the assignments of error as they relate to the Wilsons.

B.      The Wilsons

LLRIG2 argues that we should decline to review the Wilson's assignments of error. It contends that the Wilsons' notice of appeal failed to designate the orders that they assign error to in their briefing, and those orders are unrelated to the judgment designated in the notice of appeal.

An appellant proceeding without a lawyer must comply with all procedural rules, *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993), and the failure to comply with the RAPs may preclude review. *State v. Marintorres*, 93 Wn. App. 442, 452, 969 P.2d 501 (1999).

RAP 5.3(a) specifies that a notice of appeal must "designate the decision or part of decision which the party wants reviewed" and, generally, we will not review an order that was not designated in the notice of appeal. RAP 2.4(a); *See Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 378, 46 P.3d 789 (2002). An exception to this rule exists, however, where an undesignated order "prejudicially affects the decision designated in the notice." RAP 2.4(b)(1). An order "prejudicially affects" the decision designated in the notice of appeal where the designated decision would not have occurred in the absence of the undesignated order. *Right-Price Recreation*, 146 Wn.2d at 379-80.

The Wilsons' notice of appeal states, "Defendants Wilson on their own behalf and for the member-managed LLC, Lost Lake Resort Investment Group, LLC, hereby seek appeal to the Court of Appeals, Division II of the judgment entered in this case on June 21, 2019." Notice of Appeal, No. 53777-0-II, (July 22, 2019). The Wilsons' brief assigns error to the court's order dismissing the motion to disqualify Kyler and Adams, and the order granting summary judgment dismissal of the Wilsons' counterclaims for breach of fiduciary duty and duty of loyalty.

First, the undesignated order dismissing the Wilsons' counterclaims does not prejudicially affect the post-trial judgement because the claims tried to the jury were for tortious interference by the Wilsons, Graham, and Mills. Although they rely on the same facts, the two sets of claims are not dependent on each other and the judgment would have occurred in the absence of the order to dismiss.

Second, the undesignated order denying the motion to disqualify LLRIG2's attorneys did not prejudicially affect the judgment against the Wilsons. Whether the Wilsons, Graham, and Mills conspired to tortiously interfere with LLRIG2 is unrelated to the alleged attorney conflict. The Wilsons' motion to disqualify asserted that the basis of the conflict was Kyler and Adams's representation of LLRIG. No claims by or against LLRIG were before the jury.

RAP 5.3(f), which instructs an appellate court to "disregard defects in the form of a notice of appeal . . . if the notice clearly reflects an intent by a party to seek review," is also inapplicable. We have determined that review of an undesignated order is appropriate under this provision where the notice of appeal "clearly reflects [the appellant's] intent to seek review of the issues decided" by that order. *S&K Motors, Inc. v. Harco Nat'l Ins. Co.*, 151 Wn. App. 633, 639, 213 P.3d 630 (2009). Here, the Wilsons' notice of appeal did not clearly reflect any such intent. Accordingly, this provision does not apply to permit review.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, A.C.J.

_____
Cruser, J.